**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

April 20, 2026

Honorable Gary R. Brown
United State District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: *Jhon Zhumi Zhumi v. Lyons, et.al* 26-cv-923 (Brown, J.)

Dear Judge Brown:

This Office represents Respondents in the above captioned habeas action filed by Petitioner Jhon Zhumi Zhumi ("Petitioner") on February 17, 2026. Docket Entry ("DE") #1. This letter and accompanying declaration are respectfully submitted in response to the amended petition (DE 8) filed by Petitioner on February 17, 2026, and Your Honor's Minute Entry dated February 18, 2026. *See* Docket.

For the reasons set forth below, the Court should deny the Petition for lack of subject matter jurisdiction or, alternatively, on the merits.

**<u>Petitioner's Immigration History</u>**

Petitioner, a native and citizen of Ecuador, entered the United States without inspection on or about December 1, 2014. *See* Declaration of Spiro M. Vandoros dated April 20, 2026 (the "Vandoros Decl.") at ¶ 4. Petitioner was processed for expedited removal. *See id.* at ¶ 5. On December 4, 2014, Petitioner filed an application for relief from removal. *See id.* at ¶ 6. On January 8, 2015 Petitioner was released from custody on bond. *Id.* ¶ 7. On August 21, 2019, Petitioner's application for relief from removal was denied by an Immigration Judge ("IJ"). *See id.* ¶ 10, Exh. A. On April 24, 2023, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision. *Id.* 11. Petitioner did not file a petition for review of the BIA's affirmance; thus, Petitioner's removal order became final. *See id.* ¶ 11.

**<u>Petitioner's Habeas Petition</u>**

On January 29, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") pursuant to a Form I-205, Warrant of Removal/Deportation. *See id.* ¶ 14, Exh. D. Petitioner was detained under 8 U.S.C. § 1231(a)(6) in order to effectuate his removal. *See id.* ¶ 23. On January 29, 2026 Petitioner was taken to ICE's Central Islip Hold Room for processing and subsequently transferred, the same day, to the Nassau County Correctional Center, where he

was held until February 1, 2026. *Id.* ¶¶ 14-15. On February 1, 2026, Petitioner was transferred to Delany Hall Detention Facility in New Jersey, where he was held until February 4, 2026. *Id.* ¶ 16. On February 4, 2026, Petitioner was transferred to the Brooklyn Metropolitan Detention Center ("MDC") where he was held until February 18, 2026. *Id.* ¶ 17. Due to his final order of removal, he was detained pursuant to § 1231(a)(6). *Id.* ¶ 23; *see also id.* ¶ 11

On February 17, 2026, Petitioner filed the Petition at issue here. *See* DE 1. The Petition alleges that Petitioner is being unlawfully detained: (1) in violation of his Fifth Amendment procedural due process rights, and (2) in violation of his Fifth Amendment substantive due process rights. *See* DE 8 ¶ 11; *see also id.* at 6-7. He asks this Court to grant his release or, alternatively, to grant him bond or direct that he be released on supervision under 8 U.S.C. § 1231(a)(3). *See id.* at 8 (Prayer for Relief), ¶¶ 5-7.

By Order dated February 17, 2026, Your Honor issued an Order that (1) scheduled a bond hearing for February 18, 2026 at 1:00 p.m.; (2) directed Respondents to produce Petitioner at the hearing; and (3) prohibited Respondents from removing Petitioner and from transferring him outside this District, the Southern District of New York ("SDNY") or the District of New Jersey ("DNJ"). *See* Docket, Scheduling Order dated February 17, 2026. On February 18, 2026, Petitioner was transferred from the MDC to the Central Islip courthouse in order to facilitate his appearance at the hearing. Vandoros Decl. ¶ 22. On February 18, 2026, the Court released Petitioner on bond. *See* Docket, Minute Entry dated February 18, 2026 ; *see also* DE 9 (sealed Order setting conditions of release).

**<u>ICE's Efforts to Remove Petitioner</u>**

On February 10, 2026 -- one week before Petitioner commenced this action and the Court prohibited Defendants from removing Petitioner and from transferring him outside this District, SDNY or DNJ-- ICE Enforcement and Removal Operations ("ERO") requested travel documents for Petitioner from the Ecuadorian consulate. Vandoros Decl. ¶ 18. On February 13, 2026, ERO received travel documents for Petitioner from the Ecuadorian consulate. *Id.* The next step in the removal process would have been to transfer Petitioner, who was then held at the Metropolitan Detention Center ("MDC"), to a different facility to await placement on a charter flight to Ecuador. *Id.* ¶ 20.

If the Court were to revoke Petitioner's bond and vacate its Order prohibiting the removal of Petitioner and his transfer outside this District, SDNY or DNJ, ERO would begin the process of effectuating Petitioner's removal by detaining him in a facility to await placement on a charter flight to Ecuador. *Id.* ¶ 26. ICE therefore believes that Petitioner's removal would be significantly likely in the reasonably foreseeable future if the Court were to revoke Petitioner's bond and vacate its Order prohibiting the removal of Petitioner and his transfer outside this District, SDNY or DNJ. *Id.* ¶ 27.

# ARGUMENT

## THE COURT SHOULD DENY PETITIONER'S REQUEST FOR RELEASE FROM DETENTION, REVOKE HIS BOND, AND LIFT THE STAY OF REMOVAL

### A. The Court is Jurisdictionally Barred from Granting this Request

8 U.S.C. § 1252(a)(5) provides in relevant part that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." As a corollary to § 1252(a)(5), 8 U.S.C. § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact" arising from a removal proceeding "shall be available only in judicial review of a final order" of removal, and "no court shall have jurisdiction . . . by any other provision of law . . . to review such an order or such questions of law or fact." Thus, § 1252(a)(5) gives the courts of appeals exclusive jurisdiction over review of final orders of removal. *Ruiz-Martinez v. Mukasey,* 516 F.3d 102, 105 (2d Cir. 2008). The "clear intent'" of Congress in enacting § 1252(a)(5) was "'to have all challenges to removal orders heard in a single forum,' i.e., the courts of appeals." *Spina v. DHS*, 470 F.3d 116, 124 (2d Cir. 2006) (quotation omitted). "'[T]aken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through' a petition for review filed with an appropriate court of appeals." *Asylum Seeker Advocacy Project v. Barr*, 409 F. Supp. 3d 221, 224 (S.D.N.Y. 2019) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis by *J.E.F.M.*)); *accord Rodriguez v. Warden, Orange County Correctional Facility*, No. 23-cv-242, 2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023).

The Second Circuit has construed §§ 1252(a)(5) and 1252(b)(9) broadly to preclude district courts from exercising subject matter jurisdiction over an action that even "indirectly challeng[es]" an order of removal. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). In determining whether an action challenges an order of removal, the Second Circuit looks to "the substance of the relief that [the] plaintiff is seeking." *Id.*

*Delgado* is instructive. Delgado filed an action in district court to compel United States Citizenship and Immigration Services ("USCIS") to adjudicate her application for a waiver of inadmissibility, contending that ICE's failure to adjudicate violated her rights under the Due Process Clause, the Equal Protection Clause and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. *Id.* at 53-54. The Second Circuit held that §§ 1252(a)(5) and 1252(b)(9) precluded the district court from exercising jurisdiction over the action, because the action was a challenge to the order of removal: if USCIS were ordered to adjudicate the application, and were to grant the waiver, she would satisfy a necessary requirement for adjustment of status, and if she then succeeded in having her status adjusted, her removal order would be rendered invalid. *Id.* at 55;[1] *accord, Singh v. USCIS*, 878 F.3d 441, 445-46 (2d Cir. 2017) (§ 1252(a)(5) precluded the district court from exercising jurisdiction over an action to compel USCIS to adjudicate the merits of the plaintiff's application for adjustment of status because ordering USCIS to consider that application

[1] Notably, Petitioner here seeks to avoid removal through a similar process – once he marries his girlfriend, he hopes to have her file a petition for alien relative on his behalf and, after it is approved, to have the two of them "file all appropriate waivers for [him] to obtain lawful permanent resident status". DE 8 ¶¶ 26-28.

could lead USCIS to approve that application, which in turn would lead to the nullification of his removal order); *Lopez Galvez v. Noem*, 25-cv-3229, 2025 WL 1823549, at *1 (E.D.N.Y. July 1, 2025) (Seybert, J.) ("§ 1252(a)(5) is a jurisdictional bar to [the court's] consideration of Petitioner's indirect challenge" to her removal order); *Leybinsky v. USCIS,* No. 19-cv-6154, 2021 WL 4407829*,* at *3-4 (E.D.N.Y. Sept. 26, 2021) (Kovner, J.) (§ 1252(a)(5) barred claim for district court order vacating the plaintiff's order of removal).

Another immigration statute, 8 U.S.C. § 1252(g), provides that, with exceptions not relevant here, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . to execute removal orders against any alien under this chapter." Section 1252(g) thereby precludes district courts from issuing an order that would prevent or hinder ICE from executing a removal order. *Troy as Next Friend Zhang v. Barr*, 822 Fed. App'x. 38, 39 (2d Cir. 2020).

Several district judges in this Circuit, among them three in this District, have held that §§ 1252(a)(5), 1252(b)(9) and/or 1252(g) bar claims to enjoin ICE from detaining an individual for the purpose of removal. Most recently, in *Villatoro v. Shanahan*, No. 26-cv-1210, 2026 WL 948297 (E.D.N.Y. Apr. 7, 2026) (Donnelly, J.), ICE detained the petitioner in order to effectuate his final order of removal. In his habeas petition, he alleged that ICE had no statutory authority to detain him and that his detention violated his due process rights. The Honorable Ann M. Donnelly held that granting the petitioner the release that he sought "would frustrate the government's ability to enforce [his] removal order; accordingly, the petitioner is making an indirect challenge to the removal order". *Id.* at *2-3 (citing *Delgado*, 643 F.3d at 54, 55 and §§ 1252(a)(5), 1252(b)(9)).

In *Sauceda Henriquez v. Noem*, 25-cv-7023, 2026 WL 111665, at *4 (E.D.N.Y. Jan. 15, 2026) (DeArcy Hall, J.), *appeal filed* January 29, 2026, ICE detained the petitioners for the purpose of effectuating their removal. The petitioners challenged their detention on due process and other grounds. The Honorable LaShann DeArcy Hall held that §§ 1252(a)(5) and 1252(b)(9) jurisdictionally barred that challenge because the challenge was "'inextricably linked to' a removal order". *Sauceda Henriquez*, 2026 WL 111665, at *4 (quotation omitted). Judge DeArcy Hall also held that "a challenge to a petitioner's detention, following an order of removal, constitutes . . . an indirect challenge to an order of removal" that is precluded by §§ 1252(a)(5) and 1252(b)(9). *Id.* (citing *Delgado*, 643 F. F.3d at 55).

Similarly, in *Villatoro v. Noem*, No. 25-cv-5306, 2025 WL 2880140, at *4 (E.D.N.Y. Oct. 9, 2025) (Merchant, J.), the petitioner sought an order releasing him from detention, contending that his detention was no longer statutorily authorized because his removal period had ended. The Honorable Orelia E. Merchant held that the claim was jurisdictionally barred by § 1252(a)(5) as "a direct attack on the validity of the removal order." *Id.; accord Lin v. Borgen*, No. 25-cv-5618, 2025 WL 2158874, at *3-4 (S.D.N.Y. July 30, 2025) (§ 1252(g) bars challenge to ICE's decision "to detain [Lin] in order to effectuate his removal"; also holding that §§ 1252(a)(5) and 1252(b)(9) preclude judicial review of questions regarding ICE's removal authority except upon a petition for review to the court of appeals); *Ceesay v. Bondi*, 25-cv-3716, 2025 WL 1435615, at *2 (S.D.N.Y. May 16, 2025) (§§ 1252(a)(5) and 1252(g) bar an action for an order prohibiting ICE from detaining Ceesay for the purpose of removing him, because such an order "would . . . interfere with the execution of a lawful removal order"; *Rodriguez v. Warden, Orange County Correctional Facility,* No. 23-cv-242, 2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023) (dismissing, as barred by §§ 1252(a)(5), 1252(b)(9) and 1252(g), action "seek[ing] an end to [Rodriguez's] detention,

which was undertaken for the precise purpose of effectuating his existing removal orders"); *Bumu v. Barr*, 20-cv-6742, 2020 WL 6465433, at * 3 (W.D.N.Y. Nov. 3, 2020) (§§ 1252(a)(5) and 1252(g) bar challenge to detention that "threaten[s] the execution of the removal order").

ICE has obtained a travel document for Petitioner. Vandoros Decl.¶ 19. Should the Court revoke bond and vacate its orders prohibiting ICE from removing Petitioner and from transferring Petitioner outside this District, SDNY or DNJ, ICE intends to effectuate his removal by detaining him in a facility to await placement on a charter flight to Ecuador. *See* Vandoros Decl. ¶¶ 26-27. Petitioner's claim for release from detention is thus a challenge to that removal order and an attempt to interfere with the execution of the order that is jurisdictionally barred by § 1252. *Villatoro v. Shanahan*, 2026 WL 948297, at *2-3; *Sauceda Henriquez*, 2026 WL 111665, at *4; *Villatoro v. Noem*, 2025 WL 2880140, at *4; *Lin*, 2025 WL 2158874, at *3-4.

### B. Alternatively, Petitioner's Request Should be Denied on the Merits

#### 1. Petitioner's Detention was Proper Under 8 U.S.C. § 1231(a)(6)

Pursuant to 8 U.S.C. § 1231(a), ICE has authority to detain an alien subject to a final removal order. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("8 U.S.C. § 1231(a), governs the detention, release, and removal of individuals 'ordered removed.'"); *accord Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("8 U.S.C. § 1231, governs the detention of aliens subject to final orders of removal.").

Section 1231 establishes a 90-day "removal period" within which the government generally must secure removal after a removal order becomes final, and during which the government "shall" detain the alien until such removal. *See* 8 U.S.C. §§ 1231(a)(1)(A), (B)(i), (a)(2) ("During the removal period, the Attorney General shall detain the alien."). In general, if an alien is not removed during the 90-day removal period, continued detention is governed by 8 U.S.C. § 1231(a)(6). Section 1231(a)(6) authorizes immigration detention beyond the 90-day removal period for a period reasonably necessary to effectuate the alien's removal from the United States; six months is a presumptively reasonable period of time for the government to effectuate the alien's removal and thus does not violate the alien's rights. *Zadvydas v. Davis,* 533 U.S. 678, 693-701 (2001).

The Supreme Court addressed the Government's authority to detain aliens after this 90-day removal period in *Zadvydas*. The Court held that 8 U.S.C. § 1231(a)(6) authorizes immigration detention for a period reasonably necessary to effectuate the alien's removal from the United States, beyond 90 days, and that six months is a presumptively reasonable period of time for the government to effectuate the alien's removal. *Zadvydas*, 533 U.S. at 699-701. The Court also made it clear that this "presumption . . . does not mean that every alien not removed must be released after six months." Id. Aat 701.

Significantly, the six-month period runs from the date the alien is actually detained, not from the date the alien's removal order became final, and the alien could have been detained. *See Callender v. Shanahan*, 281 F. Supp.3d 428, 435 (S.D.N.Y. 2017) (habeas petitioner "is confusing the 90-day 'removal period' under [Section 1231(a)(1)(A)], which began when his order became final in 2006[,] with the six month presumptively reasonable period of detention under *Zadvydas*, which could not have begun until he was detained by ICE in 2015") (citations omitted). This makes

perfect sense since the Supreme Court in *Zadvydas* was concerned with the potential for indefinite detention under § 1231(a)(6). *Zadvydas*, 533 U.S. at 690; see also *Jiang v. Bondi*, 2025 WL 3281819, at *2 (D.N.M. Nov. 25, 2025) (finding detention proper where removal period had begun to run 20 years earlier, because petitioner confuses the "90-day removal period" with the "six-month presumptively reasonable period of detention under *Zadvydas,* which could not have begun until he was detained by ICE"); *Piao v. Lyons*, 2025 WL 3046783, at *2 (E. D. Va. Oct. 31, 2025 ("conclude[ing], as has other courts, that the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the Government's ability to detain Petitioner for the purpose of enforcing that removal order at this time"); *Rodriguez-Guardado v. Smith*, 271 F.Supp.3d 331, 335 n.8 (D. Mass. 2017) ("Petitioner's contention that the *Zadvydas* clock runs while he is not in custody defies common sense.") (internal quotation marks and citations omitted); *Chun Yat Ma v. Asher*, No. C11-1797 MJP, 2012 WL 1432229, at *3 (W.D. Wash. Apr. 25, 2012) (noting that "[d]etention is the core issue in *Zadvydas*" and holding that "the time between Petitioner's removal order becoming final and his detention does not impact the due process analysis established by *Zadvydas*").

After the six-month period expires, the initial burden is on the alien to show "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *Callender*, 281 F. Supp.3d at 434 (citing *Pineda v. Shanahan*, 258 F.Supp.3d 372, 379 (S.D.N.Y. 2017)). If the alien makes such a showing, the burden shifts to the Government to provide "evidence sufficient to rebut that showing." *Id.* It is not sufficient for the alien to show that the government has been unable to obtain a travel document to date. *Callender*, 281 F. Supp.3d at 434-35. The alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 434. Thus, in sum, the Supreme Court concluded, that if the alien fails to meet the burden, or if the government rebuts the alien's showing by establishing "significant likelihood of removal in the reasonably foreseeable future, then continued detention is permissible." *Zadvydas*, 533 U.S. at 701; *Callender*, 281 F. Supp.3d at 434 (citing *Beckford v. Lynch*, 168 F. Supp.3d 533, 539 (W.D.N.Y. 2016)). "[O]nce the removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, at 699. Thus, the Supreme Court avoided the "serious constitutional threat" presented by a literal interpretation of 8 U.S.C. § 1231(a)(6), which could authorize "indefinite, perhaps permanent, detention" in some circumstances, *id.*at 688, 699.

Here, Petitioner's 90-day mandatory detention period under § 1231 did not begin until Petitioner was detained on January 29, 2026. *Lin*, 2025 WL 3751855, at *4; *Gualpa-Mizhquiri*, 2026 WL 396081, at *3. Furthermore, even if he were to be detained for beyond that period, he would not be entitled to release unless "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. And, as Respondents have demonstrated, there is a significant likelihood of removal in the reasonably foreseeable future because ICE has obtained a travel document for Petitioner and is prepared to effectuate his removal once the Court revokes his bond and vacates it Order prohibiting ICE from removing him and from transferring him outside this District, SDNY or DNJ. Vandoros Decl. ¶¶ 19, 26-27. *See Kuprashvili v. Flanagan*, No 25 Civ. 5268, 2026 WL 1067217, at *12 (S.D.N.Y. Apr. 20, 2026) (ICE demonstrated significant likelihood of removal because it had obtained a travel document and could execute the removal order once the court vacated its stay of removal).

### 2. Petitioner's Detention Did Not Violate Due Process

To state a claim for procedural due process, a petitioner must establish: (i) a cognizable liberty or property interest, and (ii) a deprivation of that interest without being afforded the process that is due to the plaintiff, which process is circumstance specific. *See Weinstein v. Albright*, 261 F.3d 127, 134 (2d. Cir. 2001) (citing *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976)) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").

To the extent Petitioner contends that his detention under *Zadvydas,* 533 U.S. at 699-701, violates procedural due process, this claim has no merit. *Zadvydas* is, in fact, unhelpful to Petitioner, as it acknowledged that "[a]fter entry of a final removal order and during the 90-day removal period ... aliens must be held in custody" under § 1231(a)(2). *See id.* at 683.

But even if Petitioner were outside of the 90-day removal period – for instance, if the Court were to calculate the 90-day period as running from the date the removal order was originally entered in 2023 – *Zadyvdas* would not compel release here. In *Zadvydas*, the Supreme Court recognized that § 1231(a)(6) authorizes immigration detention beyond the 90-day removal period for a period reasonably necessary to effectuate the alien's removal from the United States. *Id.* at 689. Here, Petitioner cannot credibly argue that the 20-day period that he had been detained prior to his release on bond exceeds a reasonable period necessary to effectuate his removal.

Nor does Petitioner adequately allege a substantive due process violation. A substantive due process claim must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Conduct is conscience-shocking only if it was "intended to injure in some way unjustifiable by any government interest." *Lewis*, 523 U.S. at 849. Where no fundamental right is at stake, "governmental regulation need only be reasonably related to a legitimate state objective." *Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022) (internal quotation omitted).

No court has ever held that an alien not lawfully admitted to the United States holds a fundamental right to remain at liberty in the United States. To the contrary, "[d]etention during removal proceedings is a constitutionally valid aspect of the deportation process." *Velasco Lopez*, 978 F.3d at 848 (citing *Demore v. Kim*, 538 U.S. 510, 523 (2003)). Removal proceedings "'would be [in] vain if those accused could not be held in custody pending the inquiry into their true character.'" *Demore*, 538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)); *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of [the] deportation procedure.").

Detaining Petitioner is rationally related to the government's interest in enforcing immigration laws. *See Avramenkov v. INS*, 99 F. Supp. 2d 210, 217 (D. Conn. 2000) ("[I]t does not shock the conscience that a certain class of aliens subject to almost certain removal are detained pending removal").

Here, other than a conclusory statement that "ICE's decision to detain Petitioner is so arbitrary that it constitutes a gross abuse of government authority," DE 8 at 7,¶ 3, Petitioner does not point to any government conduct that could plausibly be considered as shocking the

contemporary consciences. *See* DE 8, generally. Instead, Petitioner concedes that he is subject to a final order of removal, DE 8 at ¶ 6, which ICE was attempting to effectuate with his detention. *See* Vandoros Decl. ¶¶ 11, 14, 18-20.

In sum, nothing about Petitioner's detention, which Congress has required, which has not been prolonged, and which is in furtherance of the execution of a valid, final removal order violates due process.

## CONCLUSION

For the reasons set forth above, the Court lacks subject matter jurisdiction over Petitioner's indirect challenge to his final order of removal, even if predicated on an alleged violation of a constitutional provision or a statute. Further, even if the Court had subject matter jurisdiction, it should deny the Petition because ICE was acting within its authority pursuant to § 1231(a)(6) to effectuate Petitioner's removal, and Petitioner has failed to establish either a procedural or substantive Due Process violation. Finally, Respondents respectfully request that the Court revoke Petitioner's bond and lift the Order prohibiting his removal and his transfer outside this District, SDNY or DNJ.

Respondents thank the Court for its consideration of this submission.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ *Thomas R. Price*
Thomas R. Price
Assistant U.S. Attorney
(631) 715-7893

cc: By ECF
All counsel of record